Our next case is CPC Patent Technologies v. Apple, 2024, 1278 and 1354. Mr. Summerfield. Thank you, Your Honor. May it please the Court, George Summerfield on behalf of Appellant CPC. The limitations of the challenge claims require a controller configured to receive a series of entries of a biometric signal, said series being characterized according to at least one of the number of said entries and a duration of said entry. On Appendix 96, the Board construed the number and duration clauses to require a number and duration of biometric signals because the input for these biometric signals is a biometric sensor as disclosed in the patent specifications. Counsel, you have a claim with two references in the same field of what's claimed, and each one provides a disclosure of the components of the claim, a biometric signal and clauses of varying duration. Why isn't it reasonable for the Board to have found that they're obvious? Because neither reference discloses the use of a biometric signal when it comes to the particular input that the Board relied upon for satisfying the claim limitations. But the claim only requires that needs for receiving a series of entries of the biometric signal, and I'm not clear why the prior art doesn't disclose that. Well, let's take Mathiasen in the first instance. In Mathiasen, we have a device equipped with, on the one hand, a fingerprint sensor. And on the other hand, what it refers to is an additional safety feature that could be there as well. It's not mandatory, according to Mathiasen. And that safety feature includes movement analyzing means and translation means, comprising hardware and software modules for analyzing finger movements, not fingerprint movements the way Apple continually characterized Mathiasen's teachings. But the two are intertwined. Your Honor. Mathiasen detects finger movements by detecting a series of fingerprint representations that have been captured by the fingerprint sensor. There's an intertwining between those two. Well, the question, Your Honor, is really whether the same device can operate to input biometric signals in certain instances and nonbiometric signals in another. And as we'll get to on the co-pending 1006 IPR, the Board made it very clear that in the prior art in that case, the same device acted like a fingerprint sensor in certain instances but not in others. And that's why the Board found the same claims, in light of what we believe to be the same type of prior art, not to be obvious. I notice that you're not challenging the motivation to combine here. No, Your Honor. So that means that I should be looking at the proposed combination and determining whether that satisfies the claim element, right? That's right, Your Honor. So when we look at Mathiasen, we have their expert, Apple's expert, testifying in deposition that when we're talking about the finger movements in Mathiasen, the focus is on the movements themselves and not the fingerprint template. That's at Appendix 3097, beginning at line 21. So even their expert says when we're talking about the movements, we're not focusing upon the biometrics. And when we look at what the Board found with regard to Mathiasen, it never actually said that the finger movements are biometric signals. At most what the Board said on Appendix 120 is there can be no reasonable dispute that Mathiasen discloses a computer-implemented software translation program for converting finger movements into control signals. That's not the same as saying these are biometric signals. And despite Apple's continual mischaracterization of the teachings as being fingerprint movements, that's not what Mathiasen says. But in any event, talking about the combination, Judge Stoll, Apple acknowledges on Appendix 115 that Mathiasen does not teach determining a duration of each entry, which is required by the claims. So when we look at the mapping on Appendix 121, Apple's mapping of the Mathiasen-Anderson combination relies exclusively on Anderson for the duration component of the biometric signal series. So let's look at Anderson. Appendix 1323, column 5, starting at line 43. Anderson teaches the method of the present invention utilizes the digitizer pad 120 as a touch interface to provide a means for inputting an access code or password via temporal variations in the amount of pressure applied to the surface of the pad 120 by the user. Separately, at column 7 beginning at line 5, Anderson teaches that the digitizer pad 120 may include an optical scanner or thermal sensor for collecting an image of the user's fingerprint as the pressure access code is entered and verified against the stored fingerprint template. So this device does two things. It senses this touch-no-touch series, and if it's included, because Anderson doesn't mandate the inclusion of a fingerprint sensor, it can also collect fingerprints. But the touch-no-touch sequence by itself is... It's the same sensor that's being used? It is, Your Honor, but you have to have this extra equipment. You have to have a thermal sensor in addition to the touch-no-touch pressure sensor in order to collect the fingerprint. And, again, when we get to the 1006 IPR, that was precisely what was going on in the prior arc there. You had the same device that was able to sense non-biometric information and, in a different mode, collect fingerprints. And we know that in Anderson, this device can operate without collecting fingerprints because it says that the fingerprint sensor is optional. So we know that the touch-no-touch sequence is by itself non-biometric, and if you additionally collect fingerprints, that doesn't affect the non-biometric nature of the touch-no-touch sequence. And because they have to combine Anderson, this non-biometric series of touch-and-no-touch movements, to get the durational component of the claims, they have to import this non-biometric component, which means the duration part applies to a non-biometric signal series rather than a biometric one. So, yes, Judge, these two references are combined, but what you end up with at the end of the day is a non-biometric signal series, not a biometric one. The language in Matheson, I think I'm saying that right, that talks about, it's paragraph 192, talks about movement analyzing means in the form of hardware or software, movement analyzing program, analyzes the obtained series of fingerprint representations to obtain a measure of the omnidirectional finger movements across the sensor in two dimensions. That sounds as if it's both looking at the fingerprint and looking at the series of fingerprints. It was looking at the movements, Your Honor, that's the point. The fact is that while it's collecting fingerprints, it may also analyze finger movements, but the point is that finger movements can be learned by anybody. If this here means duress, anyone can enter that. It can be learned. It isn't indicative of the biometrics of the user. But if then that is replaced, that movement is replaced with a dot-dot-dit, instead it's taught by a secondary reference? That clearly isn't biometric, because the dot-dot-dit from Anderson is non-biometric, clearly. So if you swap out whatever Matheson's teaching about how you enter signals with Anderson in any way, shape, or form, what you end up with is something that is non-biometric. And since they need Anderson, necessarily that combination doesn't render obvious the claims of the patents. And to the extent there's any question about what that series is in Anderson, on page 14 of the blue brief, CPC replicates the recognition of both parties' experts that Anderson's pressure and duration patterns are knowledge-based. In other words, they are not biometric signals. So again, modifying Matheson with Anderson's touch-no-touch pattern does not result in a claim duration characterizing a series of entries of a biometric signal, no matter what Matheson teaches at the end of the day. As the PTAB stated on Appendix 40, if the number and duration of presses did not include a biometric component, which is the case in Anderson, it would simply be a knowledge-based security measure based on a pattern rather than based on a unique physical attribute of the user, which you need to have a biometric signal. Now, the distinction between biometric and knowledge-based input is clearly illustrated in the co-pending 1006 IPR. And we provided the remand decision at docket 35. On page 98 of that decision, the board found that there is a substantive distinction between the finger press command entry function and the fingerprint user authentication function in Matheson 067. Both functions use the same touch-sensitive switch 1 in the form of a fingerprint sensor with navigation means. So Judge stole the ear point there in a reference where the same device was doing two things. The board found that because it was doing a non-biometric signal entry in what the challenger was relying upon in the 1006 proceeding was, there was no obviousness there. The same reasoning applies here. Are these patents expired? No, Your Honor, they're not expiring. So on page 99, the board concluded in the 1006 proceeding, essentially switch 1, a fingerprint sensor does not, in fact, act as a fingerprint sensor when switched to the cursor command motion. Don't they go back to 2004? I think there was a patent term extension, Your Honor. But I can find out if that matters. Well, I'm looking at 705 and it says zero days. Go ahead. Go ahead. All right. Thank you, Your Honor. So just as in the co-pending 1006 IPR, Anderson's digitizer pad, even when equipped with an optical scanner or thermal sensor, does not act as a fingerprint sensor when it is sensing the temporal variations in the amount of pressure applied to its surface. There was no reasonable way for the board to have found that Anderson teaches a series of a biometric signal while at the same time finding that Mathias in 067 does not teach that limitation as both teach a knowledge-based pattern of finger presses, albeit collected via a device that can also serve to collect fingerprints. At docket 37, Apple's response to this facial inconsistency is to quote the board that the Apple IPR involved a different petitioner, different evidence, and different arguments. That is all true because there were different parties involved and there was a different reference. However, those differences don't explain the difference in logic the board used in looking at Anderson and Mathias in 067 in that other proceeding. There is no explanation as to why in one case something that serves as a fingerprint sensor sometimes and a non-biometric signal sensor other times renders obvious a claim in one case but not in the other. At red brief pages 26 to 27, while Apple attempts to distinguish the two Mathias references, Apple is entirely silent on the similarities between Mathias in 067 in that parallel case and the Anderson reference in this case, the reference they rely upon to supply the duration of the biometric signal series limitation. They just don't address it. And they can't because in both instances it's the same thing. So whatever differences there may have been between that proceeding and this, it doesn't explain away the facial inconsistency. And it's our submission that because they need to rely on a non-biometric signal to get to the claims, the claims aren't rendered obvious because they do require a number and a duration of a biometric signal series. Unless there are other questions, I'll reserve. We will save you time. And let me just point out that the 208 patent was extended for 78 days, but that doesn't bring it beyond 04. Sorry, Your Honor. I stand corrected. Mr. Lloyd. May it please the Court. I think given the discussion this morning, I'll just jump straight to paragraph 192 of Mathiasen because I think that largely disposes of the issues that have been discussed. And the Board reproduced the entire paragraph at appendix 59 of its decision and added emphasis to the key parts. And the key parts are, there are a couple of key parts. The first is that Mathiasen has expressed that its system is configured to receive, quote, a series of fingerprint representations, plural. That is a biometric signal series, plain and simple. And CPC really has no answer for that part of it. And then I think the second key part of this is, not only does it receive a series of fingerprint representations, it's to, I think Judge Prost also commented on this, it's that Mathiasen says the way it detects finger movements and touch-no-touch finger presses is by analyzing the fingerprint representations. And so in Mathiasen, the fingerprint, the biometric data, the fingerprint representations is married to the detection of touch-no-touch finger presses. In that, I think you pair that with, as the Board's claim construction recognized, in appendix 36 to 37, column 10 of the patents, which is the exemplary embodiment the Board recognized of these limitations. In column 10 of the patents, the description there is, you have an administrator who wants to enroll a new user. And the way the administrator does that is by tapping out a predetermined pattern. I think dit-dit-dit-da is the example. Three short presses and one long press. And the patent actually just describes them as finger presses. It does not mention in column 10 anything about the biometric data. That tapping out of a known, learned pattern on the fingerprint sensor is what triggers the system to then be able to enroll the new user. And it compares that tapped-out pattern to pre-stored signals. Can I, do I understand correctly that the proposed modification of Mathiasen is that, to modify it so that it's not finger movements detected by the sensor, but instead it's going to have the dit-dit-dot, as taught by the secondary reference, but it would be analyzed in Mathiesen by the fingerprint with the dit-dit-dot. Is that right? Do I have that comment? I think 95%, right, Judge Stoll? And the only 5% difference is that Mathiasen actually says both, and right there in paragraph 192, both finger movements and touch-no-touch. So Mathiasen is already actually configured to be able to detect multiple finger touches, and what Anderson was relied on is exactly what you said, is this concept of measuring the duration of each of those touches. And that's why at the bottom of appendix 57, the board quotes Apple's petition, explaining that the only modification here would be simple programming to take those touch-no-touch finger movements that are already coming in Mathiasen and calculate the number and duration of those, just like the patents teach. I think the only other point maybe to touch on, of course happy to answer any questions, is this discussion of the board's decision in another IPR involving a different petitioner and different prior art references. As we put in our 28J letter, the board, after a remand from the director, repeatedly distinguished the prior art and the record evidence there from here. Most importantly, the prior art sensor there, the board found, could be configured in multiple ways. In some ways it would operate as a biometric sensor, and in other ways it was configured not to operate as a biometric sensor. But here, the board found that Mathiasen is always operating as a biometric sensor because it analyzes finger touch-no-touch by detecting the fingerprint representations, and so there is no difference. Unless the court has any further questions, we'd ask that you affirm. Thank you, counsel. Mr. Summerfield has two minutes for a vote. Thank you, Your Honor. I want to start with the dit-dit-dit-dot disclosure, and the patents ensue. That is merely what the administrator does to allow for the enrollment of a user. It is not itself the biometric signal series. That discussion, the biometric signal series, we discuss at pages 7 and 8 of the blue brief, which references the steps in figures 7 and 8. And there, for the enrollment process, the challenge patents explain that steps 805 and 806 and figure 8 involve sequences of finger presses on the biometric sensor by the user to be enrolled. So the dit-dit-dit-dot may be the things that open up the enrollment process by the administrator, but that's not the actual enrollment. What the patents talk about is the entry of biometric signals via the fingerprint sensor to enroll a new user. That's how they store the information in the first instance. As for Mathiasen, it seems like Apple is now running away from what its experts said, because, again, in deposition, the experts said when you're talking about the finger movements in Mathiasen, the focus was on the movements themselves and not on the fingerprint template. So when they say, well, they're using the fingerprints as sort of a surrogate for the finger movements, that's not what their experts said. The only thing that Mathiasen cares about when it's measuring finger movements is which direction the finger's moving in, what the pattern is. And when you talk about modifying Mathiasen with Anderson, there's absolutely no evidence in the record as to how one could just simply lift Anderson's teachings of durational variability, stick them in Mathiasen, and have that work. There just isn't any evidence of that. All they talk about is just simply say combine Mathiasen with Anderson. Well, if they do that, what they end up with is a duration of a non-biometric signal. Thank you, Your Honors. Thank you, counsel. Both counsel and cases submitted.